May it please the court, counsel. My name is William Shipley. I represent Plaintiff Joshua Nakagawa. I'm having a little trouble with this headset. Every police use of force case that goes to trial oftentimes comes down to a request to the jury to not grant full credibility to the justification provided by the officers. This case is no different. Yet Judge Watson, in issuing his ruling, in effect stepped into the role of the jury and immediately began adopting the presentation of the defense case that merely parroted the justifications given by the officers notwithstanding the fact that the opposition pointed out to him in many instances that the officers' own statements were factually inconsistent with each other and that there were evidence from third parties as well as physical evidence that conflicted with the officers' statements. Speaking of facts, it's correct, isn't it, in your brief that your factual statements contain no reference to the excerpts of record? Absolutely. Is that correct or incorrect? No, that's correct. When I focused on preparing the brief, I did not have any objections to the facts as the court set them forth. And I think at the beginning of the brief it says— It's not a matter of objections, counsel. Our rules require that you do that so that we can test the accuracy of your argument by referring to the documents in the record that support it or not. Yes.  Yes, but Judge Watson's opinion set forth both sets of facts. I was focused on the text of his opinion because— Whatever the judge does, does that relieve you as counsel of the responsibility to comply with the rules of this court? No, absolutely not, Your Honor. And if I had to write over again, I certainly would not go down that path again. When did you file that brief? Oh, Your Honor, it was filed two and a half years ago. So in the intervening two and a half years, you could have supplemented the brief with citations to the record, correct? Yes, Your Honor, and it— It's not an uncommon rule of appellate procedure, both at the state and federal level, that if somebody fails to provide the record support for an assertion made in the belief, that is a red flag for the idea that the record will not support the argument they're making. Why shouldn't we adhere to such a principle? Well, in this case, Your Honor, because Judge Watson's order acknowledges both sets of facts, and then he makes a determination inappropriately as to which fact he is going to accept. It's not a question of there's facts buried in the record that aren't revealed in the order, and that you have to go find them in order to find that he has adopted one set of facts over another set of facts. He comes right out in the order and says so. And as I was assembling the brief, that's where my focus landed. There's no question that had I, again, had I to do this over again, taking a look at the criticism, it would have been very simple. Did you file a response brief? No. No, because when I read the county's brief, again, I had the same idea in mind. The answer to my question is no. Yes, correct. The answer is no. Okay. Go ahead. So, yes. You didn't move to file a substitute brief after you read the county's brief pointing out the deficiencies. You didn't say, oops, I will move to file a brief that complies. I didn't, Your Honor, but, again, in looking back at my own brief, I kept going back to Judge Watson's order, which the facts from both sides were set forth by Judge Watson. And I thought it was facially obvious from his own language that he had done something here that was specifically not appropriate on summary judgment. It was almost purely a procedural question. We often lose cases on procedural questions. You're taking a risk with your client's case when a deficiency has been pointed out and you fail to correct it when you have years to do it. You're taking a risk, an unnecessary risk, with your client's case. But let's move on to the facts. What is it that you think creates a tribal issue of fact here? Your Honor, I think there are two very significant ones that jump right out from the very beginning. And that is whether or not the officer's statements that they didn't realize anybody else in the truck is credible when there were seven other people in the truck, and there's at least one argument that says the officer's talking to him. By that standard, you would never get summary judgment because you would always say there's evidence supporting summary judgment, but it could be false. That is not the law. That is not the law in the Ninth Circuit. It's not the law anywhere after the Supreme Court's summary judgment cases from the mid-'80s. You have to create a tribal issue of fact not by simply saying they might be lying but actually providing contrary evidence. Well, but the contrary evidence was there were eight people in the truck, that the jury could accept that there were eight people in the truck, and the officer's testimony they didn't see anybody was not credible. Did your client admit or do you admit on behalf of your client that the truck struck Officer Losevar? We do not deny that the truck made contact with Officer Losevar. Okay. Judge Watson's careful. If somebody drove a truck at me or drove a truck that hit me, I would assume there was some point of contact. Sure. Didn't your client also admit that after striking Losevar that the truck aimed at Officer Matsura? Again, that's a characterization. I thought your client admitted most of these things. The truck drove in the direction. It's a very narrow road. There's really nowhere else to go if the truck's going to go that way. There's a confined space. It could stop. When it sees police, it could stop. Your client doesn't deny the truck didn't stop, that it made contact, as you say, with one officer while moving, and that it continued to move in the direction of another officer. None of that is denied. No, we're not denying that. Why isn't that then the case? Well, because I think the object of evidence and even the testimony of the officers is that most of the rounds were fired after the truck had passed by all of the people that are in the road. As soon as it goes around the infinity, there's nothing in front of it anymore. And by Officer Losevar's testimony, which is contradictory, which I think raises the question of— So what's the consequence of all that? They're supposed to say, oh, this truck hit one officer, narrowly escaped hitting another officer. We're going to let him go? Well, I think once the truck's going down the road, it's no longer a threat, and therefore the use of deadly force is no longer justified by law. We would characterize— Even against a driver or anybody at all? Yeah, anybody at all. The driver's not a threat to anybody. Now there's other police operators. You think letting a truck that just narrowly, I mean, hit one officer and narrowly avoided hitting another officer because he jumped out of the way, letting the truck continue down the road where there certainly are other people that could be struck, you think that is a safe thing for the police to do? And when that truck then hits a pedestrian, the police say, well, you know, we're out of danger. We just let him go. Is that your position taken on behalf of your client? No, because the facts of this case are that the next town is miles away. There's nothing between where they are and— There are no cars coming in the opposite direction? There's no traffic on the road? There are no people walking the road? It's 4.30 in the morning, and this is a very rural part of Maui. There is nothing out there for miles. It took the officers 15 minutes to respond from the nearest town where they were at to get to the location where they first came upon the infinity. I promised counsel I would save him a bit of time, and I'm already down to only one minute. Okay. Let's hear from a co-counsel. Good morning, Judges Kozinski, Judge Bee, and Judge Hawkins. My name is Hayden Aluli, and I represent Anthony Lumjohn. You know, across the nation, we hear in the news, you know, police officers shooting people. In this case— Circumstances like this? Well, in this case, in Hawaii, Your Honor, there were many rounds fired toward a truck, toward a truck with four people in the back of the pickup truck. Is there any evidence that the officers intentionally fired at the passengers? Your Honor, that to me— Yes or no? Yes, Your Honor, because of the way the bullets went to the tailgate of the truck, there were— So it's your position they were intentionally trying to apply deadly force to the passengers in the vehicle? Your Honor, that should be a question for the jury. That should be a question. That's why we believe the district court erred in making credibility findings, because a jury could well believe at 430 in the morning in an isolated rural area, no cars in the road, when that truck left the area where the police were, where Officer Loveser were, and Loveser then started taking pot shots at that truck. A jury could disbelieve that theory that the police were justified, and a jury could actually come down and say, you know, I don't believe that, because the internal inconsistencies of the evidence, physical evidence, as well as the witness testimonies, is a jury could well find that was unreasonable. And given what's going on across our country, and as applied in this case, I would urge the court to give my client and Mr. Nakagawa a right to a jury, to have a jury determine whether or not those police officers saw eight kids in a truck, four in the front and four in the back. A jury could disbelieve that, just the way the physical evidence were. Four police cars, bright lights, witnesses saying, those guys are the guys. So let it be for the jury. That's what a jury is all about, and we believe that the trial court respectfully erred at this stage of the litigation in granting summary judgment to the police. Thank you. Thank you very much, Your Honors. Good morning, Your Honors. I am Juan Aludi. How are you? Good, thank you. Is there anything you've heard today that you don't think is adequately correspondent to your brief? I don't, Your Honor. I think we covered everything. Thank you. Thank you. Okay, so I will stand submitted. Next we'll hear REB versus State of Hawaii Department of Education.
judges: Kozinski, Hawkins, Bea